**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CHRISTOPHER EARL PEEK, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 24-3125 (RC) |
| | : | | |
| v. | : | Re Document No.: | 2 |
| | : | | |
| CLEAR SKY FINANCIAL, LLC, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

**I.  INTRODUCTION**

Plaintiff Christopher Earl Peek sued Defendant Clear Sky Financial, LLC ahead of a

pending non-judicial foreclosure sale of a property owned by Peek, LLC.  Plaintiff,[1] proceeding

*pro se*, alleges various violations of federal and local consumer protection laws, as well as the

District of Columbia Tenants Opportunity to Purchase Act.  Plaintiff moves for a temporary

restraining order barring Clear Sky from moving forward with foreclosure on the property.  The

Court concludes that Plaintiff does not show any likelihood of success on the merits because

Peek, LLC is the proper party to bring nearly all of these claims.  In addition, the relevant local

and federal consumer protection statutes appear to lack application here.  Plaintiff's motion must

therefore be denied.[2]

---

[1] The Court refers to Mr. Peek as "Plaintiff" to avoid confusion with the LLC.

[2] In addition to opposing Plaintiff's motion for injunctive relief, Clear Sky has moved to
dismiss the Complaint.  *See* Def.'s Opp'n to Mot. for TRO and Mot. Dismiss at 10–12, ECF No.
5.  As Plaintiff's deadline to respond to the motion to dismiss has not yet passed, *see* Fox/Neal
Order, ECF No. 7, the Court addresses here only Plaintiff's motion for emergency injunctive
relief.  The Court may return to Clear Sky's arguments under Federal Rules of Civil Procedure 8
and 9 when the motion to dismiss becomes ripe.

## II.  FACTUAL BACKGROUND

Plaintiff purchased a residential property in the District of Columbia, executing a deed of trust securing repayment of a $412,887 promissory note in 2009.  Ex. E to Compl., ECF No. 1; Ex. A to Def.'s Opp'n to Mot. for TRO and Mot. Dismiss ("Def.'s Opp'n"), ECF No. 5.  In October 2017, Plaintiff created Peek, LLC, under the laws of Delaware.  Ex. R to Def.'s Opp'n. According to its website, Peek, LLC is a certified public accountant ("CPA") firm.  Ex. 10 to Def.'s Supp. Mem., ECF No. 9-10.  The website additionally states that Plaintiff is a CPA and former banker who "has financed over 200 companies in his career" and served as a "Senior Policy Advisor at the U.S. Treasury," among other accomplishments.  Ex. 8 to Def.'s Supp. Mem., ECF No. 9-8.  Plaintiff appears to be the sole member of Peek, LLC.  *See* Ex. R to Def.'s Opp'n; Compl. ¶¶ 26–27.

Plaintiff states that he defaulted on the 2009 loan, and that the bank began foreclosure proceedings.  *See* Pl.'s Reply at 24.  Plaintiff then sold the property to Peek, LLC for $615,000 via special warranty deed on November 21, 2018, paying $17,866.50 in taxes and fees.  Ex. B to Def.'s Opp'n.  On the same day, Peek, LLC executed a commercial deed of trust securing a promissory note for a $125,000 commercial loan from Clear Sky.  Ex. C to Def.'s Opp'n ("Deed of Trust"); Ex. D to Def.'s Opp'n ("Promissory Note").  The deed of trust lists Peek, LLC as the grantor and Clear Sky as the beneficiary.  *See* Deed of Trust at 1.  Plaintiff signed both documents for Peek, LLC in his capacity as Chief Executive Member of the company.  *See* Deed of Trust at 10; Promissory Note at 4.  The loan carried a 12-month term, with a maturity date of November 30, 2019.  *See* Promissory Note at 1.

A member of Clear Sky Financial, LLC, testified at a hearing before the Court that the company commonly issues short-term, secured loans for the renovation and marketing of

residential properties.  When Plaintiff approached Clear Sky for a loan in October 2018, a Clear

Sky employee asked him whether the residence was "an investment property or a personal

residence," as the company did not accept personal guarantees.  Pl.'s Expedited Reply to Def.'s

Supp. Mem. at 29.[3]  Plaintiff responded that he lived in Atlanta and supplied his address there,

adding that he planned to repay the loan through CPA services, "contract and settlement fees for

a large financing" expected to close soon, or "[s]ale of the home."  *Id.*  Plaintiff additionally

signed a borrower affidavit—in his capacity as Chief Executive Member of Peek, LLC—that the

loan had a "commercial purpose" and that the loan "will be used for a project that is solely

business, commercial, or investment related . . . and expressly not for personal, family, or

household purposes."  Ex. E to Def.'s Opp'n at 1.  The affidavit states that the loan was intended

for "financing and/or rehab of investment property" and that the "proceeds [are] for

investment/business purposes only."  *Id.*

Emails between Plaintiff and Clear Sky demonstrate that Peek, LLC encountered

difficulties paying back the commercial loan.[4]  *See* Ex. F to Def.'s Opp'n; Ex. G to Def.'s

Opp'n.  Peek, LLC sought relief through the District of Columbia's Homeowner Assistance

Fund.[5]  *See* Exs. H–N to Def.'s Opp'n.  On March 22, 2023, Clear Sky and Peek, LLC agreed to

a modification of the promissory note, extending the maturity date to March 31, 2024.  *See* Ex.

---

[3] The Court does not expect this filing to be docketed until tomorrow due to its late submission.

[4] Plaintiff alleges that he "made and continues to make timely payments on the loan per the loan terms."  Compl. at 3; *see also* Pl.'s Mot. to Stay Foreclosure Proceedings and Temporary Restraining Order ("Pl.'s Mot.") ¶ 1, ECF No. 2 ("The plaintiff is not in breach of the loan.").  These assertions are not credible given the record presently before the Court.  The record indicates that the loan came due on March 31, 2024, *see* Ex. L. to Def.'s Opp'n., and there is no indication that Plaintiff has paid off the loan's principal of $125,000.

[5] Clear Sky presumably did not foreclose on the property during this time due to a moratorium on foreclosures during the COVID-19 pandemic.  *See* D.C. Code § 42-851.01.

L. to Def.'s Opp'n.  That modification indicated that the principal balance of $125,000 remained

unpaid, and that the total balance stood at approximately $168,000.  *Id.*  Peek, LLC made regular

installment payments on the loan's interest.  *See* Ex. D. to Compl. (Payment Records);

Promissory Note at 1 (providing monthly payments of $1,250, applied to "interest only").  As of

early 2024, Peek, LLC was several payments behind on the commercial loan.  *See* Ex. O to

Def.'s Opp'n.  Clear Sky sent Peek, LLC a notice of default on August 30, 2024, after the loan's

extended maturity date had passed.  Ex. P to Def.'s Opp'n.  A notice of foreclosure sent on

October 21, 2024, indicated that a non-judicial foreclosure would occur on December 5, 2024.

Ex. A to Compl.; Ex. Q to Def.'s Opp'n.

Plaintiff filed this lawsuit on November 4, 2024, asserting that Clear Sky violated a litany

of federal and local laws regulating both extension of credit and foreclosure.  *See generally*

Compl.  These include the Equal Credit Opportunity Act ("ECOA"), the Truth in Lending Act

("TILA"), the D.C. Tenants Opportunity Purchase Act ("TOPA"), the Fair Debt Collection

Practices Act ("FDCPA"), and Real Estate Practices Act ("RESPA").  *See id.*  Plaintiff

additionally claims that Clear Sky is not registered with the Nationwide Multi-State Licensing

System ("NMLS") or licensed under D.C. law to act as a mortgage lender.  *See id.*

Plaintiff moves for a temporary restraining order barring the foreclosure sale scheduled

for December 5, 2024.  *See* Pl.'s Mot. to Stay Foreclosure Proceedings and Temporary

Restraining Order ("Pl.'s Mot."), ECF No. 2.  Clear Sky opposes this motion and also moves to

dismiss, although the motion to dismiss is not yet ripe.  *See* Def.'s Opp'n.  Plaintiff filed a reply,

*see* Pl.'s Reply, ECF No. 10, and Clear Sky filed a supplemental memorandum, *see* Def.'s Supp.

Mem., ECF No. 9.  The Court held a hearing on the temporary restraining order on December 2,

2024.  *See* Min. Entry dated December 2, 2024.  Plaintiff then filed a further reply to Clear Sky's

supplemental memorandum.  *See* Pl.'s Expedited Reply to Def.'s Supp. Mem.

### III.  LEGAL STANDARDS

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a

clear showing that the [movant] is entitled to such relief.'"  *John Doe Co. v. Consumer Fin. Prot.*

*Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*,

555 U.S. 7, 22 (2008)).  "An application for a TRO is analyzed using the same factors applicable

to a request for preliminary injunctive relief."  *Scottsdale Cap. Advisors Corp. v. Fin. Indus.*

*Regul. Auth., Inc.*, 678 F. Supp. 3d 88, 99 (D.D.C. 2023) (citing *Gordon v. Holder*, 632 F.3d 722,

723–24 (D.C. Cir. 2011)).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to

succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

the public interest."  *Winter*, 555 U.S. at 20.  "Of course, the movant carries the burden of

persua[ding]" the Court that these factors merit preliminary relief, *Fla. EB5 Invs., LLC v. Wolf*,

443 F. Supp. 3d 7, 11 (D.D.C. 2020) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir.

2004)), and must do so by making a "clear showing," *Cobell*, 391 F.3d at 258.  A district court

must generally consider and balance each of these factors in deciding whether to issue a

preliminary injunction.  *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011).  Where

a plaintiff shows "no likelihood of success on the merits," however, the Court need not "proceed

to review the other three preliminary injunction factors."  *Guedes*, 920 F.3d at 10 (quoting *Ark.*

*Dairy Coop. Ass'n v. United States Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009)).  "A

preliminary injunction may be granted based on less formal procedures and on less extensive

evidence than in a trial on the merits." *Cobell*, 391 F.3d at 261 (D.C. Cir. 2004).

"A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S.

89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Because

Plaintiff in this case is proceeding *pro se*, the Court will construe his complaint and motion

liberally and hold his filings "to less stringent standards than formal pleadings drafted by

lawyers." *Id.*  Thus, the Court may "examine other pleadings to understand the nature and basis

of [the plaintiff's] *pro se* claims" as alleged in his complaint.  *Gray v. Poole*, 275 F.3d 1113,

1115 (D.C. Cir. 2002).  Nevertheless, even a *pro se* plaintiff is not excused from adhering to the

applicable procedural rules and must "plead factual matter that permits the court to infer 'more

than the mere possibility of misconduct.'"  *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672,

681–82 (D.C. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## IV.  ANALYSIS

Plaintiff claims that Clear Sky violated numerous consumer and tenant protection statutes

in connection with the loan secured by the commercial deed of trust.  *See generally* Compl.; Pl.'s

Mot. ¶ 2.  He asserts that he will suffer irreparable harm from the pending foreclosure sale, and

that the balance of the equities weighs in his favor because Clear Sky is not a registered

residential lender.  *See* Pl.'s Mot. ¶ 4.  Plaintiff further argues that a temporary restraining order

would be in the public interest because Clear Sky did not register in the District of Columbia and

violated consumer protection laws.  *See id.* ¶ 5.  Clear Sky argues that Peek, LLC is not present

before the Court, and that Plaintiff is not the proper party to represent the LLC's interests.  *See*

Def.'s Opp'n at 8–10.  In addition, Clear Sky contends, Plaintiff cites no legal provisions that

apply to the facts here.  *See id.* at 10–19.  The Court agrees that Plaintiff has not established any

likelihood of success on either his standing to bring this lawsuit or the applicability of statutes

regulating residential mortgages.  As such, the Court does not "proceed to review the other three

preliminary injunction factors."  *Guedes*, 920 F.3d at 10.

### A.  Likelihood of Success on the Merits

#### 1.  Standing

Clear Sky asserts that most of the injuries Plaintiff alleges implicate the commercial loan

to which Peek, LLC is a party, as well as the property Peek, LLC owns.  *See* Def.'s Opp'n at 8–

10.  As such, Plaintiff is the wrong party to bring this lawsuit, according to Clear Sky.  *See id.*

Plaintiff argues that he has standing and has a direct, personal interest in the cause of action.  *See*

Pl.'s Reply at 11.  The Court agrees with Clear Sky that Plaintiff fails to show a likelihood of

success on the issue of standing.

First, it is clear that only Plaintiff, and not Peek, LLC, is properly before the Court.  "A

Delaware LLC is 'a separate legal entity' created through Delaware's sovereign power as a state"

with its own "separate legal existence."  *Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784,

809 (Del. Ch. 2020) (citing 6 Del. C. § 18-201(b)).  As the Supreme Court has explained, "[i]t

has been the law for the better part of two centuries . . . that a corporation may appear in the

federal courts only through licensed counsel."  *Rowland v. Cal. Men's Colony*, 506 U.S. 194,

201–02 (1993).  "[T]he rationale for that rule applies equally to all artificial entities," including

"corporations, partnerships, or associations," as federal law "provid[es] that 'parties may plead

and conduct their own cases personally or by counsel.'"  *Id.* at 202 (quoting 28 U.S.C. § 1654).

Courts in this Circuit have repeatedly held that LLCs are not properly before the court unless

represented by counsel.  *See, e.g.*, *Johnson v. Fed. Commc'ns Comm'n*, No. 1:21-cv-2050, 2022

WL 17262173, at *3 (D.D.C. Nov. 29, 2022) (citing *Greater Se. Cmty. Hosp. Found., Inc. v.*

*Potter*, 586 F.3d 1, 4 (D.C. Cir. 2009)); *180 E. Broad Partners LLC v. Ohio Dep't of Tax'n*, 193

F. Supp. 3d 1, 1  (D.D.C. 2014).  An artificial entity "must be represented by counsel or it will be

treated as not having appeared at all."  *Alexian Bros. Med. Ctr. v. Sebelius*, 63 F. Supp. 3d 105,

108 (D.D.C. 2014); *see also Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857–58 (7th

Cir. 2011) ("[A] corporation, being nothing more than 'a convenient name for a complex web of

contracts among managers, workers, and suppliers of equity and debt capital,' is legally

incapable of appearing in court unless represented by counsel—'corporations must appear by

counsel or not at all.'").  Plaintiff does not represent that he is an attorney, and no attorney has

entered an appearance on his or the LLC's behalf in this case.  Peek, LLC is an artificial entity

that must appear in federal court through a licensed attorney.  In light of these longstanding legal

principles, Peek, LLC is not party to this lawsuit and is not present before the Court.[6]

As Plaintiff appears to complain of injuries to an LLC with separate legal existence, the

next question is whether he has standing to bring these claims on his own behalf.  It is another

general principle of corporate law that "[f]or a plaintiff to have standing to bring an individual

action, he must be injured *directly* or *independently* of the corporation."  *Brookfield Asset Mgmt.,*

*Inc. v. Rosson*, 261 A.3d 1251, 1271 (Del. 2021).  The relevant "two-part test" under Delaware

law inquires as to "(a) who suffered the alleged harm," as well as "(b) who would receive the

benefit of any recovery or other remedy."  *In re FairPoint Ins. Coverage Appeals*, 311 A.3d 760,

767 (Del. 2023), as revised (Dec. 19, 2023) (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,

---

[6] Plaintiff encourages the Court to ignore these corporate formalities, as "PEEK, LLC is an alter ego of Christopher Peek, and the entities are indistinguishable [for] personal or business [purposes]." Compl. ¶ 27.  Plaintiff may not enjoy the benefits of membership in a limited liability company—including limitations on personal liability and separate legal personhood—while seeking to escape its burdens.  These burdens include representation by counsel.

845 A.2d 1031, 1033 (Del. 2004)).  This same test applies to LLCs, as well.  *See Kelly v. Blum*,

No. CIV.A. 4516-VCP, 2010 WL 629850, at *9 (Del. Ch. Feb. 24, 2010).

Here, the injuries Plaintiff alleges in his complaint all accrued to Peek, LLC, and he does

not allege direct, independent injury to himself.[7]  Because Peek, LLC executed the loan

agreement with Clear Sky, any defect in that agreement injures Peek, LLC and not Plaintiff, who

is a nonparty to that agreement.  *See 333 8th St., NE, LLC v. Turnkey Title, LLC,* No. 23-cv-941,

2023 WL 5528028, at *4 (D.D.C. Aug. 28, 2023) (concluding that plaintiff was not the proper

party to sue because "his alleged injury is no different from" that of the LLC of which he was the

sole member).  Assuming that the ECOA, TILA, FDCPA, and RESPA apply to the commercial

loan, any violation of those statutes would injure Peek, LLC.  So, too, would any damages

arising from any failure by Clear Sky to properly register as a mortgage lender.  Similarly, if

Plaintiff were to prevail in this action, any injunctive relief or damages award would benefit the

LLC, and not Plaintiff personally.  Plaintiff thus has no viable, independent injury that might

provide the standing necessary to challenge injuries to the LLC, and he has not established a

likelihood that he has standing to bring the claims in this lawsuit.

Finally, Plaintiff encourages the Court to ignore these formalities, asserting that Clear

Sky preyed upon him when he was in financial need and encouraged him to place the property in

the LLC to get the commercial loan.  *See* Pl.'s Reply at 2.[8]  Plaintiff compares his position to that

of the debtor in *In re Dawson*, 411 B.R. 1, 13 (Bankr. D.D.C. 2008).  In that case, the debtor

obtained a purportedly commercial loan to forestall foreclosure on her residence and potentially

prepare it for sale.  *Id.* at 15.  The court concluded that the lender extended a consumer loan

---

[7] Plaintiff's TOPA claim represents the single injury that might apply to him as an individual.  The Court explains below why that statute is inapplicable here.

[8] Plaintiff expanded upon these allegations during the Court's motion hearing.

subject to statutes such as the TILA and the D.C. Home Loan Protection Act. *See id.* at 33–35, 49–50. *In re Dawson* is distinguishable here, however, because the debtor was "extremely unsophisticated in financial affairs," such that she likely did not grasp the difference between a personal and commercial loan made directly to her. *Id.* at 15. Plaintiff, in contrast, represents that he is a former banker and Treasury Department employee with significant experience managing loans. It is thus unlikely that the difference between a consumer and commercial loan would escape Plaintiff, or that he would be unable to understand the implications of a commercial deed of trust and a note stating that the loan is for commercial purposes. *See* Deed of Trust; Promissory Note. In addition, unlike the debtor in *Dawson*, Plaintiff placed the property in an LLC and acquired a loan in the LLC's name rather than his own. When Clear Sky asked about the nature of the property before making the loan, Plaintiff implied that it was an investment property rather than his personal residence. Pl.'s Expedited Reply to Def.'s Supp. Mem. at 29. He additionally represented that he would repay Clear Sky from commercial sources or by marketing the home. *See id.* It is reasonable, under the facts of this case, for a creditor to believe that a short-term loan to the LLC for the purpose of renovating the property for sale would be commercial in nature, and that the creditor would decline to treat it as a consumer loan.

Plaintiff additionally alleges that he was "under extreme duress" when he agreed to the commercial loan, Compl. ¶ 65, and that it was a matter of public record that he was facing two foreclosures at the time, *see* Pl.'s Reply at 24. The Court construes these allegations of duress to include not only the contract for the loan, but also transfer of the property to the LLC. If these actions were not sufficiently willful, then the Court could consider the transfer to be contrived and conclude that the loan was truly personal in nature. Yet it is not enough that Plaintiff was

under financial pressure at the time he transferred the property and signed the loan paperwork. In contract law, "to prove economic duress a plaintiff must establish: (1) a wrongful act or improper threat; (2) the absence of a reasonable alternative to entering the agreement; and (3) the lack of free will." *Qualls v. Rumsfeld*, 412 F. Supp. 2d 40, 44 (D.D.C. 2006) (citing *Applied Genetics Int'l, Inc. v. First Affil. Secs., Inc.*, 912 F.2d 1238, 1242 (10th Cir. 1990)). There is no indication that Clear Sky engaged in a wrongful act or made an improper threat to coerce Plaintiff or his LLC to take the loan or place his property in the LLC. *See* Restatement (Second) of Contracts § 176 (1981) (describing limited circumstances when a threat is improper). In negotiating the terms of the loan, Clear Sky itself had no power over Plaintiff or the LLC, and Plaintiff does not allege that Clear Sky threatened to take any particular action if he declined the loan. Plaintiff's claim to duress is therefore unlikely to succeed, as he does not show that the transfer to the LLC was somehow ineffective. For these reasons, Plaintiff is unlikely to demonstrate that he—and not Peak, LLC—is the proper party to bring these claims.

### 2. Applicability of Consumer Protection Statutes

Clear Sky additionally asserts that the statutes Plaintiff cites do not apply to these circumstances. *See* Def.'s Opp'n at 12–16. Plaintiff responds that Peek, LLC is a consumer because it receives goods and services that are primarily for personal, household, or family use. *See* Pl.'s Reply at 13. Even assuming that Plaintiff can show he is the proper party to bring this lawsuit concerning a commercial loan between two companies, the Court concludes that he is unlikely to demonstrate that the legal provisions he invokes apply to the commercial loan.

Plaintiff first raises TOPA as grounds for an injunction. *See* Pl.'s Mot. ¶ 2. TOPA is a D.C. statute requiring certain "owner[s] of a housing accommodation" to provide "tenant[s] an opportunity to purchase the housing accommodation" before selling or demolishing the property.

D.C. Code § 42-3404.02(a).  Clear Sky does not own the property, so TOPA does not require it

to provide Plaintiff the opportunity to purchase the property.  Furthermore, the statute expressly

excludes from its scope "any transfer by foreclosure . . . pursuant to a bona fide deed of trust or

mortgage."[9]  *Id.* § 42-3404.02(c)(2)(C).  Because the property in this case would transfer through

foreclosure, TOPA has no application here.

Plaintiff next points to ECOA.  *See* Pl.'s Mot. ¶ 2.  That statute renders it "unlawful for

any creditor to discriminate against any applicant, with respect to any aspect of a credit

transaction . . . on the basis of race."  15 U.S.C. § 1691(a).  "ECOA prohibits disparate treatment,

which occurs when the defendant has 'treated [a] particular person less favorably than others

because of a protected trait.'"  *Bradshaw v. Vilsack*, 560 F. Supp. 3d 101, 134 (D.D.C. 2021)

(quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)).  "Because Title VII of the Civil Rights

Act of 1964 also prohibits disparate treatment, courts frequently interpret ECOA with reference

to Title VII and the case law applying Title VII in employment discrimination cases."  *Id.*  The

D.C. Circuit has made clear that an ECOA claim may only arise from discrimination in relation

to a "credit transaction."  *See Garcia v. Johanns*, 444 F.3d 625, 629 (D.C. Cir. 2006) (holding

that failure to investigate a discrimination complaint was not a "credit transaction" under

ECOA); *Love v. Johanns*, 439 F.3d 723, 732 (D.C. Cir. 2006) (same); *see also* 12 C.F.R.

§ 202.2(m) (defining "credit transaction," in part, to include extension, terms, or alteration of

credit, as well as collection procedures).

---

[9] Plaintiff does assert that he "is a tenant in residence and signed a lease" with Peek, LLC beginning "on or near November 2017."  Compl. ¶ 81.  If this allegation is true, then his circumstances would at least meet TOPA's requirements for single-family residences, which are only eligible when a tenant "signed a rental agreement to occupy" the property "by March 31, 2018."  D.C. Code § 42-3404.09(c).  Tenants in the District of Columbia generally become tenants at will when the property at which they reside undergoes a foreclosure sale.  *See Banks v. E. Sav. Bank*, 8 A.3d 1239, 1243 (D.C. 2010) (citing D.C. Code § 42–522 (2001)).

The facts presently before the Court do not represent a "clear showing" that Clear Sky violated ECOA. *John Doe Co.*, 849 F.3d at 1131. Although Plaintiff alleges that he is Black, *see* Compl. at 2, he alleges no facts indicating that Clear Sky treated him less favorably than others because of his race. In addition, ECOA protects only individuals who apply for credit. *See* 15 U.S.C. § 1691a(b) ("The term 'applicant' means any person who applies to a creditor directly for an extension, renewal, or continuation of credit."). Peek, LLC—not Plaintiff—was the applicant in this case. Assuming without deciding that an LLC can be considered an "applicant" for the purposes of ECOA, there are also no facts alleged or present in the record indicating that Clear Sky discriminated against the LLC because of Plaintiff's race. To the contrary, the record shows that Clear Sky extended courtesies to Peek, LLC when it was not necessarily required to do so. There is no indication that Clear Sky moved to foreclose on the property when the initial maturity date passed in November 2019. *See* Promissory Note at 1. Clear Sky worked directly with the Homeowner Assistance Fund to provide documentation supporting a grant, *see* Exs. H–N to Def.'s Opp'n, and agreed in March 2023 to extend the loan's maturity date to March 2024, *see* Ex. K to Def.'s Opp'n at 9. No other facts in the record indicate that Clear Sky treated Peek, LLC less favorably than other applicants based on race.

Plaintiff additionally alleges that Clear Sky violated the Real Estate Practices Act because "Plaintiff made multiple written requests to Clear Sky that are subject to RESPA Regulation X in Dual Tracking," and Clear Sky presumably did not respond to those requests. Compl. ¶ 103; *see also* Pl.'s Mot. ¶ 2. RESPA requires loan servicers to provide certain disclosures to borrowers in connection with mortgage loans. *See Henok v. Chase Home Fin., LLC*, 950 F. Supp. 2d 96, 98 (D.D.C. 2013) (discussing 12 U.S.C. § 2605(e)(1)(A)). Federal regulations also outline various loss mitigation procedures for loan servicers. *See* 12 C.F.R. § 1024.41; *see also* Compl. ¶ 79

(referencing Plaintiff's loss mitigation application). The statute and its implementing regulations

do not apply, however, to "extensions of credit . . . primarily for business, commercial, or

agricultural purposes." 12 U.S.C. § 2606; *see also* 12 C.F.R. § 1024.5(b)(2) (explaining that

RESPA "does not apply to "[a]n extension of credit primarily for a business, commercial, or

agricultural purpose."). As discussed previously, the loan at issue here is commercial in nature.[10]

Plaintiff also alleges that Clear Sky violated the Fair Debt Collection Practices Act. *See*

Compl. ¶¶ 61–62. "The FDCPA protects (1) consumers (2) who have been subjected to abusive,

deceptive or unfair debt collection practices (3) by a debt collector (4) in an attempt to collect a

debt." *Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28, 35 (D.D.C. 2012) (citing

*Muldrow v. EMC Mortg. Corp.*, 657 F.Supp.2d 171, 174–75 (D.D.C. 2009)). Again, the loan

between Peek, LLC and Clear Sky is not a consumer loan, but rather a commercial loan between

two companies. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573,

577 (2010) (explaining that the FDCPA "regulates interactions between *consumer* debtors and

'debt collector[s]'" (emphasis added)). Even if Clear Sky engaged in abusive conduct and could

properly be considered a debt collector, the nature of the loan precludes application of the

FDCPA.

Plaintiff contends that Clear Sky's employees are not "licensed under or listed in"

NMLS. Compl. ¶ 68. The Secure and Fair Enforcement for Mortgage Licensing Act ("SAFE

Act") "encourages States to participate in the national registry and implement a system for

registering and licensing loan originators, and charged [the U.S. Department of Housing and

Urban Development] with oversight." *Neighborhood Assistance Corp. of Am. v. Consumer Fin.*

---

[10] Plaintiff's reference to the Truth in Lending Act is unavailing for similar reasons, *see* Compl. ¶ 64, as that statute does not apply to "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes." 15 U.S.C. § 1603(1).

*Prot. Bureau*, 907 F. Supp. 2d 112, 117 (D.D.C. 2012).  That licensing scheme applies to certain

"loan originator[s]" who "take[ ] a residential mortgage loan application" or "offer[ ] or

negotiate[ ] terms of a residential mortgage loan for compensation or gain."  12 U.S.C.

§ 5102(4)(A).  Yet the definition of "residential mortgage loan" includes only those extended

"primarily for personal, family, or household use."  *Id.* § 5102(9).  The loan here was "expressly

not for personal, family or household purposes," but rather for the "commercial purpose" of

rehabilitating an investment property.  Ex. E to Def.'s Opp'n.  Even if the SAFE Act provisions

did apply to the loan here, "the SAFE Act does not contain a private right of action."  *Evans v.*

*Hood*, No. 1:19-cv-03346, 2020 WL 3605651, at *4 (D.D.C. July 2, 2020) (citing *Murphy v.*

*Bank of N.Y. Mellon*, No. 14-cv-02030, 2014 WL 4222188, at *6 (N.D. Cal. Aug. 25, 2014)).

"In fact, the SAFE Act does not appear to contain any judicially enforceable provisions

whatsoever" and instead simply encourages states to establish a nationwide licensing system.  *Id.*

(discussing 12 U.S.C. § 5101).

The District of Columbia did implement this licensing scheme, however, when it

amended the Mortgage Lender and Broker Act ("MLBA") in 2009.  *See* Mortgage Lender and

Broker Amendment Act of 2009, 2009 District of Columbia Laws 18-38 (stating that the act was

intended to comply with the SAFE Act).  Plaintiff refers briefly to the MLBA, asserting that it

prohibits a mortgage lender from making a mortgage loan with the intent to foreclose on the

borrower's property.  *See* Compl. ¶¶ 66–67.  Yet the MLBA contains the same definition—

nearly word for word—as its federal counterpart, limiting its application to mortgage loans

"primarily for personal, family, or household use."  *Id.* § 26-1101(12); *see also* Def.'s Opp'n at

13–14; *cf. In re Hardy*, No. 16-00280, 2017 WL 2643946, at *3 (Bankr. D.D.C. June 19, 2017),

*aff'd*, 589 B.R. 217 (D.D.C. 2018) (noting that the MLBA's provisions "do not apply to

mortgage lending with respect to commercial property"). Again, the commercial loan at issue here was intended for rehabilitation of an investment property, not for personal use. *See* Ex. E to Def.'s Opp'n.[11] The MLBA is thus inapplicable, as well.[12]

For these reasons, even assuming that Plaintiff can establish standing to bring these claims on behalf of Peek, LLC, the claims would fail largely because of the express commercial nature of the loan. For this additional reason, the Court concludes that Plaintiff has failed to show any likelihood of success on the merits. Where a plaintiff shows "no likelihood of success on the merits," the Court need not "proceed to review the other three preliminary injunction factors." *Guedes*, 920 F.3d at 10. Because Plaintiff has not made the "clear showing" necessary for the Court to issue the "extraordinary remedy" of a temporary restraining order, his motion must be denied. *John Doe Co.*, 849 F.3d at 1131.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Christopher Earl Peek's Motion to Stay Foreclosure Proceedings and Temporary Restraining Order (ECF No. 2) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: December 2, 2024                                    RUDOLPH CONTRERAS
                                                           United States District Judge

---

[11] As with its federal counterpart, it is unclear whether the MLBA contains a private cause of action. *See Rivera v. JPMorgan Chase Bank, N.A.*, No. 1:23-cv-00225, 2023 WL 6276648, at *6 (D.D.C. Sept. 26, 2023); *Mushala v. US Bank, Nat'l Ass'n*, No. 18-cv-1680, 2019 WL 1429523, at *9 (D.D.C. Mar. 29, 2019).

[12] Plaintiff contends that Clear Sky did not conduct due diligence on his ability to pay the loan, and that the company knew the property was his primary residence. *See* Pl.'s Reply at 14, 19, 24. Plaintiff appears to rely on *In re Dawson* for these assertions. The bankruptcy court there faulted the lender because the D.C. Home Loan Protection Act requires a lender to consider whether a borrower can repay the loan. *See In re Dawson*, 411 B.R. at 51 (citing D.C. Code § 26-1152.02(a)). That statute applies only where the loan is made "[t]o a natural person primarily for personal, family, or household purposes." D.C. Code § 26-1151.01(14)(A)(i). The loan here was made to an LLC and not a natural person.